| | |
|---|---|
| **CATO OF TEXAS L.P.**, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>**OAKLEY, INC.**, )<br>)<br>Defendant. )<br>) | **COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiff Cato of Texas L.P. ("Cato"), complaining of Defendant Oakley, Inc. ("Oakley"), alleges the following.

## INTRODUCTION

1. This action arises out of Oakley's willful infringement of Cato's federally registered and common law trademarks.

2. Since at least 1946 and at more than 1,100 stores, Cato and its licensees and affiliates have offered goods and services—including eyeglasses, sunglasses, and related accessories—under CATO-formative marks.

3. Despite Cato's prior use of the CATO-formative marks, Oakley adopted nearly identical KATO and OAKLEY KATO marks in connection with its own sunglasses. Oakley's goods directly overlap with and are highly related to Cato's goods and are marketed and sold to the same kinds of customers.

4. Oakley undoubtedly knows about Cato's superior rights in the CATO-formative marks. Indeed, after Oakley filed its own application to register the KATO mark, the United States

1

Patent & Trademark Office refused to register that mark due to a likelihood of confusion with Cato's CATO-formative marks. Undeterred, Oakley continues to use KATO, filed a subsequent application to register OAKLEY KATO, and continues to use both infringing marks notwithstanding Cato's demands to stop.

5. As a result, Cato brings this action for trademark infringement and unfair competition under the Lanham Act, common law, and North Carolina Unfair and Deceptive Trade Practices Act. Cato seeks an injunction to stop Oakley's infringing uses, damages, costs, attorneys' fees, and a ruling that Oakley's application for the OAKLEY KATO mark be rejected.

## PARTIES

6. Cato of Texas L.P. is a Texas limited partnership with a principal place of business at 8100 Denmark Road, Charlotte, North Carolina 28273.

7. Upon information and belief, Oakley is a Washington corporation with a principal place of business at 1 Icon, Foothill Ranch, California, 92610.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a)–(b), 1367.

9. Upon information and belief, Oakley regularly and intentionally conducts business in this state by, among other things, offering for sale, selling, and distributing goods bearing the infringing KATO and OAKLEY KATO marks.

10. Upon information and belief, Oakley sold goods bearing the infringing KATO and OAKLEY KATO marks to North Carolina customers, as evidenced by the internet reviews and posts attached to this Complaint as Exhibit 1.

11. Upon information and belief, Oakley's goods bearing the infringing marks are available for purchase at brick-and-mortar stores located within North Carolina, as evidenced by the "Find in Store" feature on Oakley's website attached as <u>Exhibit 2</u>.

12. Upon information and belief, Oakley operates its own retail stores in North Carolina.

13. Upon information and belief, Oakley sells its goods through retailers and distributors that Oakley knows sells products in North Carolina.

14. Upon information and belief, Oakley offers warranties to North Carolia customers who purchase its products.

15. Upon information and belief, Oakley operates an interactive e-commerce website that offers goods to—including goods bearing the infringing marks—and exchanges data with North Carolina customers.

16. Upon information and belief, Oakley's website solicits and collects personal data from North Carolina website visitors.

17. Upon information and belief, Oakley's website enables North Carolina website visitors to create accounts, make purchases, book appointments, register products, and enroll in a loyalty program, all of which involve the transmission of personal and financial data.

18. Oakley's website includes a "Find a Store" feature that allows users to locate Oakley's retail locations, sales consultants, or distribution partners within North Carolina and book appointments at those locations.

19. For these and other reasons, this Court has personal jurisdiction over Oakley consistent with the principles underlying the U.S. Constitution and N.C. Gen. Stat. § 1-75.4.

20. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391.

**FACTUAL BACKGROUND**

*Cato's Business and Trademarks*

21. Cato is a leading specialty retailer of women's fashion products and accessories.

22. Cato and its affiliates own and operate more than 1,100 brick-and-mortar stores in the United States in at least thirty-one states.

23. Cato and its affiliates also operate an e-commerce website, https://www.catofashions.com/, through which Cato and its affiliates offer and sell goods to customers in every state in the U.S. other than California.

24. Among the goods Cato and its affiliates sell are eyeglasses, sunglasses, and related accessories.

25. In addition to those goods, Cato and its affiliates also sell a wide variety of retail clothing and fashion accessories, including shirts, t-shirts, blouses, knit tops, sweaters, sweatshirts, pants, jeans, shorts, skirts, leggings, dresses, blazers, jackets, coats, vests, scarves, hats, undergarments, sleepwear, loungewear, sportswear, shoes, footwear, handbags, jewelry, watches, wallets, cosmetics, fragrances, lotions, soaps, hair accessories, and gifts.

26. Since at least 1946, Cato, its licensees, and affiliates have continuously offered goods and services in United States commerce under the CATO mark and other CATO-formative marks.

27. Since at least January 2002, Cato, its licensees, and affiliates have continuously offered and sold eyeglasses, sunglasses, and related accessories under the CATO mark and other CATO-formative marks.

28. Cato owns U.S. Trademark Registration No. 4,054,848 ("The '848 Registration") for the mark CATO in standard in characters, directed to the following goods:

4

Case 3:25-cv-00772-MOC-SCR     Document 1     Filed 10/08/25     Page 4 of 17

- International Class 9 – "Sunglasses"

- International Class 14 – "Jewelry and watches."

- International Class 18 – "Handbags."

- International Class 25 – "Shoes, scarves, lingerie, sleepwear, shapewear, namely, bras, girdles, camisoles and undergarments, hats, caps, belts, shirts, tops, blouses, blazers, jackets, coats, bottoms, shorts, pants, skirts, dresses, leggings, hosier, socks, sweatshirts, and sweatpants."

29. The '848 Registration issued on November 15, 2011, from an application filed on August 6, 2010. The '848 Registration recites a first use in commerce date of at least July 2005 for the goods in International Classes 9, 14, and 18; and at least October 2005 for the goods in International Class 25. A true and correct copy of the registration certificate for the '848 Registration is attached as Exhibit 3.

30. Cato has continuously used the CATO mark in connection with the goods recited in the '848 Registration since at least the first use in commerce dates recited in the '848 Registration.

31. The '848 Registration constitutes constructive notice of Cato's ownership of the registered CATO mark.

32. The '848 Registration is incontestable and therefore constitutes conclusive evidence of the validity of the registered CATO mark, Cato's ownership of the CATO mark, and Cato's exclusive right to use the registered CATO mark in commerce in the United States in connection with the goods and services recited in the '848 Registration.

33. Cato owns U.S. Trademark Registration No. 5,586,795 ("The '795 Registration") for the mark:



directed to the following goods and services:

- International Class 9 – "Sunglasses and eye glasses."

- International Class 14– "Watches and jewelry."

- International Class 18 – "Handbags and wallets."

- International Class 25 – "Tops, bottoms, namely, jeans, pants and shorts; dresses, jackets and coats, hosiery, lingerie, undergarments, shaping legwear, namely, leggings stockings, pantyhose; scarves, gloves, headwear, belts, sleepwear, socks and footwear."

- International Class 26 – "Hair accessories, namely, hair ribbons, elastics, ornaments, scrunchies, barrettes, clips, bands, sticks and bows."

- International Class 35 – "Retail clothing store services featuring fashion accessories, gifts, clothing, perfumes and colognes."

34. The '795 Registration issued on October 16, 2018, from an application filed on September 20, 2016. The '795 Registration recites a first use in commerce date of at least July 1, 2016. A true and correct copy of the registration certificate for the '795 Registration is attached as Exhibit 4.

35. Cato has continuously used the CATO (Stylized) mark in connection with the goods recited in the '795 Registration since at least the first use in commerce dates recited in the '795Registration.

36. The '795 Registration constitutes constructive notice of Cato's ownership of the registered CATO (Stylized) mark.

37. The '795 Registration is incontestable and therefore constitutes conclusive evidence of the validity of the registered CATO (Stylized) mark, Cato's ownership of the CATO

6

(Stylized) mark, and Cato's exclusive right to use the registered CATO (Stylized) mark in commerce in the United States in connection with the goods and services recited in the '795 Registration.

38. Cato owns U.S. Trademark Registration No. 5,639,861 ("The '861 Registration") for the mark CATO in standard in characters, directed to the following goods:

- International Class 9 – "Battery chargers; sunglasses; eye glasses."

- International Class 14– "Key chains; key rings; works of art of precious metal; jewelry; watches."

- International Class 16 – "Bookmarkers; bookmarks; writing instruments; writing implements; writing utensils; pens."

- International Class 20 – "Display racks; display stands; display cases; jewelry organizer displays; works of art made of bamboo, wood, wax, plasters, and plastic."

39. The '861 Registration issued on December 25, 2018, from an application filed on July 12, 2017. The '861 Registration recites a first use in commerce date of at least January 2002 for the goods in International Class 9; at least December 1, 1963, for the goods in International Class 14; and at least July 2005 for the goods in International Classes 16 and 20. A true and correct copy of the registration certificate for the '861 Registration is attached as Exhibit 5.

40. Cato has continuously used the CATO mark in connection with the goods recited in the '861 Registration since at least the first use in commerce dates recited in the '861 Registration.

41. The '861 Registration constitutes constructive notice of Cato's ownership of the registered CATO mark.

42. The '861 Registration is incontestable and therefore constitutes conclusive evidence of the validity of the registered CATO mark, Cato's ownership of the CATO mark, and

7

Cato's exclusive right to use the registered CATO mark in commerce in the United States in connection with the goods recited in the '861 Registration.

43. The marks that are the subject of the '848 Registration, the '795 Registration, the '861 Registration, and CATO mark and other CATO-formative marks Cato uses on a common-law basis in connection with eyeglasses, sunglasses, and related accessories are collectively referred to in this Complaint as the "CATO Marks."

44. In addition to these registrations, Cato owns eighteen (18) additional U.S. trademark registrations for CATO and CATO-formative marks directed to a wide variety of fashion-related goods and services. A table detailing these registrations is attached hereto as Exhibit 6.

45. The CATO Marks are inherently distinctive and have acquired distinctiveness as to eyeglasses, sunglasses, and related accessories.

46. Cato has expended significant resources in advertising and promoting sunglasses bearing the CATO Marks.

47. The CATO Marks have acquired substantial goodwill and a strong association with Cato in the minds of relevant consumers nationwide.

48. As a result of Cato's substantial investment in and longstanding use of the CATO Marks, the public has come to associate the CATO Marks with a single source, namely Cato.

*Oakley's Business and Infringing Activity*

49. Oakley describes itself as "the most iconic sports eyewear company the world has known."

50. Upon information and belief, Oakley designs and sells eyeglasses, sunglasses, and related accessories.

51. Notwithstanding Cato's longstanding use of the CATO Marks in connection with eyeglasses, sunglasses, and related accessories, Oakley adopted the highly similar KATO mark for use in connection with its own sunglasses.

52. On or around May 6, 2021, Oakley introduced its new KATO product via the following social media post:



53. On or around June 3, 2021, Oakley filed intent-to-use Application Serial No. 90/752,498 (the "KATO Application," attached hereto as <u>Exhibit 7</u>) to register the mark KATO in connection with the following goods in International Class 9:

> Optical lenses; ophthalmic lenses; contact lenses; cases for contact lenses; eyeglasses; sunglasses; cases for eyeglasses and sunglasses; frames for eyeglasses; frames for sunglasses; frames for spectacles; chains for eyeglasses; chains for sunglasses; cords for spectacles; cords for eyeglasses; cords for sunglasses; parts for spectacles, namely, replacement lenses, frames, nose pads, bridge pads, spectacle temples, ear stems, eyeglass holders, adjustable grips, ear locks; goggles, namely, goggles for swimming, snow, scuba, and for sports; wearable computers, namely, activity trackers, smartwatches, smart glasses, smart rings, smart bands and smart bracelets in the nature of wearable activity trackers; wearable communications apparatus, namely, activity trackers, smartwatches, smart glasses, smart rings, smart bands and smart bracelets in the nature of wearable activity trackers; wearable computer peripheral devices, namely, smartwatches, smart glasses, smart rings, smart bands and smart bracelets in the nature of wearable activity trackers, that feature recorded software that communicates data to personal digital assistants, smart phones, and personal computers through Internet websites and other computer and electronic communication networks; downloadable computer application software for use with wearable computer devices, namely, for tracking

9

performance and providing reports on performance tracked as well as providing alerts, messages, emails, and reminders concerning such performance, and also for recording, organizing, transmitting, manipulating, reviewing, and receiving text, data, audio, image and digital files concerning such performance; downloadable computer application software for use with wearable computer devices, namely, for database management and for use in electronic storage of data."

54. On September 27, 2021, Cato filed a Letter of Protest with the U.S. Patent and Trademark Office ("USPTO") (i) identifying the '848 Registration, the '795 Registration, and the '861 Registration together with grounds for rejecting the KATO Application because of a likelihood of confusion between the applied-for KATO mark and Cato's registered CATO marks and (2) requesting that the Deputy Commissioner for Trademark Examination Policy at the USPTO provide this information to the examining attorney assigned to the KATO Application for consideration and refusal of the Application.

55. The USPTO subsequently issued a Letter of Protest Notice of Determination, accepting the Letter of Protest as "identif[ying] one or more grounds for refusal appropriate in ex parte examination" and determining that "[s]ome or all of the evidence satisfies the requirements for letters of protest and will be included in the application record for the examining attorney to consider." A copy of the Letter of Protest is attached hereto as Exhibit 8.

56. On February 28, 2022, the USPTO issued an Office Action refusing registration of the KATO mark in the KATO Application "because of a likelihood of confusion with the marks in" Cato's '848 Registration, '861 Registration, and '795 Registration. That Office Action is attached as Exhibit 9.

57. Because Oakley failed to respond to the Office Action, the USPTO deemed the KATO Application abandoned on September 12, 2022.

10

58. Notwithstanding the USPTO's determination that KATO is confusingly similar to the CATO Marks, Oakley continues to use KATO in connection with sunglasses, as evidenced by the following offerings currently available on its website:

  

59. After the USPTO determined that the KATO mark is confusingly similar to the CATO Marks, Oakley filed a new intent-to-use Application, Serial No. 97/538,932 (the "OAKLEY KATO Application," attached hereto as Exhibit 10) to register the mark OAKLEY KATO in connection with the following goods in International Class 9:

> optical lenses; ophthalmic lenses; contact lenses; cases for contact lenses; eyeglasses; sunglasses; cases for eyeglasses and sunglasses; frames for eyeglasses; frames for sunglasses; frames for spectacles; chains for eyeglasses; chains for sunglasses; cords for spectacles; cords for eyeglasses; cords for sunglasses; parts for spectacles, namely, replacement lenses, frames, nose pads, bridge pads, spectacle temples, ear stems, eyeglass holders, adjustable grips, ear locks; goggles, namely, goggles for swimming, snow, scuba, and for sports.

60. In addition to its standalone use of the KATO mark, Oakley also uses the OAKLEY KATO mark in connection with sunglasses, as evidenced by the following offerings on its website:

 

11

61. Oakley is using its infringing KATO and OAKLEY KATO marks on the exact same goods, namely sunglasses, on which Cato uses the CATO Marks and that are recited in the '848 Registration, the '795 Registration, and the '861 Registration.

62. Oakley's goods are highly related to other goods on which Cato uses the CATO Marks, specifically, eyeglasses and related accessories.

63. Upon information and belief, Oakley and Cato market and sell their respective goods to the same class of customers through the same or similar channels of trade.

64. Oakley's infringing KATO and OAKLEY KATO marks are highly similar in sight, sound, meaning, and overall commercial impression as compared to Cato's CATO Marks.

65. KATO is an exact phonetic equivalent to—in other words, it sounds the same as—CATO.

66. The addition of Oakley's trade name, OAKLEY, before KATO exacerbates the likelihood of confusion.

67. Oakley's use of its infringing KATO and OAKLEY KATO marks is likely to cause confusion, mistake, and deception.

*Related Proceedings*

68. On January 16, 2025, Cato initiated Opposition No. 91296330 before the Trademark Trial and Appeal Board opposing registration of the OAKLEY KATO Application on the basis of likelihood of confusion with the CATO Marks ("Opposition").

69. Upon information and belief, during the pendency of the Opposition, Oakley has continued to use the infringing KATO and OAKLEY KATO Marks in connection with the sale, offering for sale, and advertising of sunglasses.

## COUNT I
## TRADEMARK INFRINGEMENT – 15 U.S.C. § 1114

70. Cato realleges and incorporates by reference each of the above paragraphs.

71. Cato owns the CATO Marks and the '848 Registration, '795 Registration, and '861 Registration. The '848 Registration, the '795 Registration, and the '861 Registration are incontestable and therefore constitute conclusive evidence of the validity of the registered CATO Marks, Cato's ownership of the registered CATO Marks, and Cato's exclusive right to use the registered CATO Marks in commerce in the United States in connection with the goods recited in the '861 Registration

72. The '848 Registration, '795 Registration, and '861 Registration are valid and enforceable.

73. Oakley has used the infringing KATO and OAKLEY KATO marks without Cato's consent.

74. Oakley's use of the infringing KATO and OAKLEY KATO marks in U.S. commerce is likely to cause confusion, mistake, or to deceive.

75. Oakley's conduct constitutes trademark infringement in violation of 15 U.S.C. §1114.

76. Oakley's infringement has caused, and continues to cause, Cato to suffer irreparable harm for which there is no adequate remedy at law.

77. Oakley's infringement has proximately caused Cato to suffer damages.

78. Upon information and belief, Oakley's infringement has been and continues to be intentional and willful.

## COUNT II
## UNFAIR COMPETITION – 15 U.S.C. § 1125(a)

79. Cato realleges and incorporates by reference each of the foregoing paragraphs.

13

80. Cato owns the CATO Marks.

81. Cato's rights in the CATO Marks are valid and enforceable.

82. Oakley has used the infringing KATO and OAKLEY KATO marks without Cato's consent.

83. Oakley's use of the infringing KATO and OAKLEY KATO marks in U.S. commerce is likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of Oakley with Cato, or as to the origin, sponsorship, or approval of Oakley's goods, services, or commercial activities by Cato.

84. Oakley's conduct constitutes unfair competition in violation of 15 U.S.C. §1125(a)(1)(A).

85. Oakley's unfair competition has caused, and continues to cause, Cato to suffer irreparable harm for which there is no adequate remedy at law.

86. Oakley's unfair competition has proximately caused Cato to suffer damages.

87. Upon information and belief, Oakley's unfair competition has been and continues to be intentional and willful.

## COUNT III
## COMMON-LAW TRADEMARK INFRINGEMENT

88. Cato realleges and incorporates by reference each of the foregoing paragraphs.

89. Cato owns common-law rights in the CATO Marks by virtue of Cato's longstanding use and recognition by the public.

90. Cato's common-law rights in the CATO Marks are valid and enforceable.

91. Cato's established its common-law rights in the CATO Marks in the U.S. prior to any use of the infringing KATO and OAKLEY KATO marks by Oakley.

14

92. Oakley has used the infringing KATO and OAKLEY KATO marks without Cato's consent.

93. Oakley's use of the infringing KATO and OAKLEY KATO marks in the same geographical areas where Cato uses the CATO Marks is likely to cause confusion, mistake, or to deceive.

94. Oakley's conduct constitutes common-law trademark infringement.

95. Oakley's infringement has caused, and continues to cause, Cato to suffer irreparable harm for which there is no adequate remedy at law.

96. Oakley's infringement has proximately caused Cato to suffer damages.

97. Upon information and belief, Oakley's infringement has been and continues to be intentional and willful.

## COUNT IV
## UNFAIR AND DECEPTIVE TRADE PRACTICES – N.C. GEN. STAT. § 75-1.1, *ET SEQ.*

98. Cato realleges and incorporates by reference each of the foregoing paragraphs.

99. Oakley's conduct is in or affecting commerce.

100. Oakley's conduct is willful, reckless, wanton, egregious, unfair, unethical, unfair, deceptive, and unscrupulous.

101. Oakley's conduct constitutes unfair methods of competition and unfair and deceptive trade practices within the meaning of N.C. Gen. Stat. § 75-1.1, *et seq.*, and North Carolina common law.

102. Oakley's conduct has caused, and continues to cause, Cato to suffer irreparable harm for which there is no adequate remedy at law.

103. Oakley's conduct has proximately caused Cato to suffer damages.

15

## COUNT V
## REJECTION OF APPLICATION – 15 U.S.C. § 1119

104. Cato realleges and incorporates by reference each of the foregoing paragraphs.

105. Cato owns the '848 Registration, '795 Registration, and '861 Registration.

106. Oakley's application for registration and use of the OAKLEY KATO mark is likely to cause confusion with the CATO Marks that are the subjects of the '848 Registration, '795 Registration, and '861 Registration.

107. This Court has the power to "determine the right to registration" pursuant to 15 U.S.C. § 1119.

108. The Court should order the rejection of the OAKLEY KATO Application on the basis of a likelihood of confusion with Cato's registered CATO Marks.

## JURY DEMAND

109. Cato demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Cato respectfully requests that this Court enter judgment in its favor as follows:

A. Permanently enjoin Oakley, its officers, agents, representatives, employees, and those persons acting in concert or participation with Oakley, from using the KATO and OAKLEY KATO marks, and any other mark, word, name, symbol, or slogan which is likely to cause confusion, mistake, or deception with respect to Cato's CATO Marks, pursuant to 15 U.S.C. § 1116(a) and all other applicable law;

B. Order Oakley to pay all damages suffered by Cato as a proximate cause of Oakley's conduct, pursuant to 15 U.S.C. § 1117(a), N.C. Gen. Stat. §§ 75-1.1, et seq., and all other applicable law;

C. Order Oakley to disgorge all profits attributable to Oakley's infringing activities, pursuant to 15 U.S.C. § 1117(a), N.C. Gen. Stat. §§ 75-1.1, et seq., and all other applicable law;

D. Award Cato enhanced damages pursuant to 15 U.S.C. § 1117(a), and all other applicable law;

E. Award Cato treble damages pursuant to N.C. Gen. Stat. §§ 75-1.1, et seq., and all other applicable law;

F. Award Cato its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a), N.C. Gen. Stat. § 76-16.1, and all other applicable law;

G. Tax the costs of this action against Oakley;

H. Grant Cato pre-judgment and post-judgment interest; and

I. Grant Cato such other and further relief as this Court deems just and equitable.

Date: October 8, 2025

Respectfully Submitted,

**BRADLEY ARANT BOULT CUMMINGS LLP**

*/s/ Matthew S. DeAntonio*
Matthew S. DeAntonio (NC Bar No. 39625)
Sarah Beth Cain (NC Bar No. 60797)
214 North Tryon Street, Suite 3700
Charlotte, NC 28202
Telephone: (704) 338-6115
Emails: mdeantonio@bradley.com
scain@bradley.com

*Attorneys for Plaintiffs The Cato Corporation and Cato of Texas L.P.*